W:\WP51\DOCS\STEELCAST\7753.0003\00153338.DOCX

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| The Official Committee of Unsecured Creditors of LB Steel, LLC,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>Steelcast, LLC, and Steelcast Limited<br><br>　　　　Defendant. | Adversary No. 17-00390 |

## STEELCAST LIMITED'S PRETRIAL BRIEF

Pursuant to the Final Pretrial Order in the above captioned case, Steelcast Limited, submits the following Pretrial Brief:

## SUMMARY OF FACTS AND PROCEDURAL POSTURE

1.　　Steelcast Limited ("Limited") is an Indian company that manufactures steel products from its sole location of business on Ruvapari Road, Bhavnagar, Gujarat India 364 005. Steelcast has never conducted any business directly with the Debtor, LB Steel LLC ("LB Steel").

2.　　Steelcast LLC ("LLC") is an Illinois Limited Liability Company with its offices located at 800 E. Ellis Road #569, Norton Shores, Michigan 49441. LLC sold rough alloy steel castings in North America and LLC sold steel products to LB Steel during the period 2014 through May 31, 2015. LLC was managed solely by its manager and 50% owner, Makary & Associates Inc., an Illinois Corporation through its President, Vaughan Makary. Limited owned the other 50% of LLC's membership interests, but had no management authority over LLC.

3.　　On April 8, 2015 LB Steel sent its purchase order #PO18665-03 to LLC for the purchase of various steel alloy castings to be used in the manufacture of steel products by LB Steel. (Exhibit "A" hereto)

4. In turn, LLC then issued its purchase order #1511 dated 4/13/15 to Limited in India to purchase the steel alloy castings to fulfill the LB Steel purchase order #PO18665-03. (Exhibit "B" hereto)

5. In May of 2015 the steel alloy castings ordered by LB Steel under its purchase order #PO-18665-03 were delivered to LB Steel.

6. LLC then invoiced LB Steel for the steel alloy casting under four separate invoices in the amount of $252,393.00 which are as follows and which are attached hereto as Group Exhibit "C":

    A) LLC invoice #1648 dated 5/18/15 for $67,890
    B) LLC invoice #1649 dated 5/18/15 for $57,436
    C) LLCt invoice #1663 dated 5/31/15 for $67,890
    D) LLCt invoice #1664 dated 5/31/15 for $59,177
                    TOTAL      $252,393.00

7. In turn, Limited then sent invoices to LLC which represent the steel products that were purchased by LLC to fulfill the order of steel alloy castings by Steel. Specifically, Limited sent LLC four invoices which were as follows and copies of which are attached hereto as group Exhibit "D":

    A) Invoice #E160045 dated 5/18/15 for $59,520
    B) Invoice #E160046 dated 5/18/15 for $47,336
    C) Invoice #E160059 dated 5/31/15 for $59,520
    D) Invoice #E160060 dated 5/31/15 for $48,763
                    TOTAL      $215,139.00

8. During the 90 days prior to the Petition Date, LB Steel then sent payments to LLC to pay LLC's invoices #1648, 1649, 1663 and 1664 in the amount of $252,393.00 (the "Payments") See attached Group Exhibit "E".

9.. From the Payments received by LLC from LB Steel, LLC then paid Limited invoice numbers E 160045, E 160046, E 160059 and E 160060 in the amount of $215,139.00 representing

2

payment for the steel alloy castings that LLC purchased from Limited and then sold, at a profit, to LB Steel under purchase order #PO18665-03.

10. All Payments were made by checks drawn on LB Steel's bank account at MB Financial Bank, and the Payments were deposited into the bank account of LLC at Fifth Third Bank

11. Subsequent to the receipt of the Payments from LB Steel, LLC and then paid the four invoices issued to LLC by Limited in the amount of $215,139.00, by issuing funds from the bank account of LLC to Limited.

12. On June 16, 2015, which was two months after LB Steel had placed it PO18665-03 with LLC and approximately a month after the ordered steel alloy castings had been delivered to LB Steel, Vaugh Makary, the principal of LLC, sent the following letter to LB Steel:

> *"Thank you for the steel casting business you have extended to our company Steelcast LLC and our partners Steelcast Limited. We value this relationship and look forward to many more year of mutual cooperations.*
> *After a detailed review of the method we are doing business between Steelcast Ltd and Steelcast LLC, we have decided this system is not the most effective for our companies and our customers.*
> *In order to better serve you in the future, all future orders should be placed on Steelcast Ltd. Steelcast LLC will no longer exist as a company after the current orders are filled.*
> *Our team will continue to have an on-going sales and customer service relationship with Steelcast Ltd. We look forward to working together for many years in the future.*
> *I will call you personally to answer any questions about this transaction. This call will also confirm your understanding of this change."* (Exhibit "F" hereto)

13. Although prior to June 16, 2015, Limited had no contacts with LB Steel and had done no business with LB Steel, while ruling on cross motions for summary judgment filed in this matter the trial court found as followings in its order of 7/24/20 regarding the effect of the June 16, 2015 letter from LLC to LB Steel:

> *"That letter was sent before the Debtor made any of the payments at issue. It expressly*

3

*provided that LLC would no longer be operating and that, going forward, the Debtor was to deal with Steelcast (Limited). As a result, after June 16, 2015, LLC was no longer the party with whom the Debtor did business. Rather, at the time of the transfers in August and September 2015, the Debtor was doing business with Steelcast (Limited), and the checks it issued were payments made to and for the benefit of Steelcast (Limited). Accordingly, the Committee has established all of the elements of its prima facie case under §547(b) except for insolvency..."*

14. As to this ruling it is the present intention of Limited to seek reconsideration or review of this ruling. Specifically, the June 16, 2015 letter only referred to LB Steel being instructed to place "**all future orders**" with Limited. The purchase order transaction at issue was placed with LLC by LB Steel on April 8, 2015. LLC delivered the steel alloy castings to LB Steel and invoiced LB Steel for these castings in May of 2015. LB Steel then sent payment for the LLC invoices to LLC in August and September of 2015. LLC deposited LB Steel's checks into LLC's bank account at Fifth Third Bank. At no time after June 16, 2015, or before June 16, 2015, did LB Steel and Limited have any contacts, communications or transactions whatsoever. Importantly, the June 16, 2015 letter specifically stated that LLC would still be an existing and operating company while all current orders were being filled which would include LB Steel's order which was completely fulfilled except for the issuance of payment by LB Steel to LLC.

15. Therefore, based upon the Trial Court's ruling of July 24, 2020, the only issue at trial is whether the Debtor was insolvent on the dates of the transfer of funds into the bank account of LLC which occurred between August 10, 2015 and September 25, 2015.

**PROOF OF INSOLVENCY OF THE DEBTOR**

The Bankruptcy Code defines "insolvent" for a corporate debtor as when its "financial condition [is] such that the sum of [its] debts is greater than all of [its] property, at a fair valuation..." As noted previously, § 547(f) of the Bankruptcy Code provides that "[f]or the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). This "presumption

4

imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion." *Louis Dreyfus Natural Gas Corp. v. Herod (In re GasMark Ltd.)*, 158 F.3d 312, 315 (5th Cir.1998) (quoting Fed.R.Evid. 301). In other words, the "effect of this presumption is to shift the burden to the transferee to produce evidence of the debtor's solvency as of the transfer date." *In re Ramba, Inc.*, 416 F.3d 394, 403 (5th Cir.2005) (citing *GasMark*, 158 F.3d at 315).

In this case the Debtor's own external auditor, Mulcahy, Pauritsch, Salvador & Co., prepared audited financial reports and balance sheets for the Debtor. These financial reports display that through the end of September 2015, LB Steel's assets exceeded its liabilities by $20,607,519.00. (See attached Exhibit "G") These financial reports, the expert testimony of James A. Falconi, CPA, and the expert report of Mr. Falconi, which discuss the financial reports and conclude that LB Steel was a solvent on-going concern as of the end of September 2015, are all joint stipulated evidence in this case. Hence, it is Limited's contention that the presumption of bankruptcy is clearly overcome by the Debtor's own financial statements, as audited by its own financial professionals. Further, the Debtor cannot now rely upon a disputed claim by Walsh Construction ("Walsh") to convert a otherwise solvent on-going business into a bankrupt entity, especially when the Debtor never mentions any such liability in any of its financial reports, actively disputes all of Walsh's claims, and made no significant attempt to settle the claims of Walsh prior to the entry of the judgment that was the sole proximate cause of the Debtor filing for bankruptcy relief.

Respectfully Submitted,

*Peter G. Swan*

*Counsel for Steelcast Limited*

5

Peter G. Swan
Counsel for Steelcast Limited
EMALFARB, SWAN & BAIN
440 Central Avenue
Highland Park, Illinois 60035
(847) 432-6900
Attorney # 6186883
peter@esb-law.com